**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Nathaniel Earl KEYS, Defendant–
Appellant.**

No. 96–10064.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 5, 1996.*

Decided Dec. 13, 1996.

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Celia M. Rumann, Assistant Federal Public Defender, Phoenix, AZ, for defendant-appellant.

Joan G. Ruffennach, Assistant United States Attorney, Phoenix, AZ, for plaintiff-appellee.

Before: CHOY, REAVLEY[**] and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

## OVERVIEW

Nathaniel Earl Keys timely appeals the district court's affirmance of his conviction, following a bench trial before a magistrate judge, for assault on his daughter in violation of 18 U.S.C. §§ 113(d)[1] and 1152. Keys argues that the district court lacked jurisdiction because the victim, who was one-fourth Indian, was not an enrolled member of any Indian tribe. Keys also argues that the Federal Enclaves Act, 18 U.S.C. § 1152, is an unconstitutional attempt by Congress to apply a general criminal code to the activities of non-Indians in Indian Country. We affirm Keys' conviction.

## FACTS AND PRIOR PROCEEDINGS

In June 1992, Nathaniel Earl Keys had a daughter. The daughter's mother is an enrolled member of the Colorado River Indian Tribe and her enrollment certificate lists her as one-half Indian blood. Keys is African-American.

At the time of the daughter's birth her mother was not living with Keys, although both the mother and Keys lived on the Colo-

[**] Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit; sitting by designation.

[1.] 18 U.S.C. § 113 was amended in 1994 by Public Law 103–322 § 170201(c)(5) to redesignate former subsections (a) to (f) as paragraphs (1) to (6) of subsection (a). 18 U.S.C. § 113(d) is now numbered 18 U.S.C. § 113(a)(4) (West 1996).

rado River Indian Tribe Reservation. The daughter lived with her mother for the first eighteen months of her life. Sometime in November 1993 the mother voluntarily gave custody of her daughter to Keys. Keys later established paternity and was granted formal custody of his daughter in tribal court. In June 1994, the mother was granted visitation rights of one 24–hour visitation period each week. On the second such visit, the mother discovered "bruises, scabs, and marks" on her daughter's bottom and called Tribal Social Services and her tribal probation officer to report possible child abuse. The mother and her probation officer took the daughter to the Indian Health Service Hospital to be examined by her treating physician. The probation officer took the daughter to the Tribal Social Services Department and placed her under the protective custody of the Tribe. She also filed a petition with the Tribe for a "child in need of care."

In March 1995, Keys was charged in an information with assault on "Jane Doe, an Indian, by striking beating or wounding," in violation of 18 U.S.C. §§ 113(d) and 1152.[2] Keys pled not guilty and a bench trial was held on May 17, 1995. At the conclusion of the trial, Keys moved for judgment of acquittal and to dismiss the indictment for lack of jurisdiction. The motion for judgment of acquittal was based, in part, on the assertion that the government had failed to prove that the victim was an Indian. In support of the motion to dismiss, it was asserted that, under *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), exercise of jurisdiction based on the Federal Enclaves Act, 18 U.S.C. § 1152, was unconstitutional.

On May 17, 1995, the magistrate judge orally denied the motions and found Keys guilty of simple assault. On May 19, 1995, the magistrate judge entered written supplemental findings and conclusions, finding that:

1. JANE DOE was approximately two years old on June 14, 1994.

2. JANE DOE's mother is an enrolled member of the Colorado River Indian Tribe ("CRIT").

3. JANE DOE has one-quarter Colorado River Indian blood.

4. JANE DOE is not an enrolled member of CRIT, but is eligible for enrollment.

5. Questions concerning JANE DOE's care and custody were litigated in the Colorado River Indian Tribal Court. The CRIT Tribal Court exercised jurisdiction over JANE DOE and still continues to do so.

6. JANE DOE's well-being was investigated by CRIT child welfare workers. Previously, CRIT child welfare workers removed JANE DOE from her mother's home and took protective custody of her. The allegations of her possible abuse were investigated by CRIT tribal police.

7. JANE DOE is provided medical services at an Indian hospital.

8. Distinctions between Indians and non-Indians for purposes of 18 U.S.C. § 1152 are political in nature, not racial.

9. If an adult or older child is eligible to enroll in an Indian tribe but fails to do so, perhaps an inference can be drawn that the individual intentionally chooses not to affiliate politically with the tribe. Since JANE DOE was a two-year old and incapable of enrolling herself, no such inference can be drawn.

10. Tribal enrollment is one way, but not the exclusive way, to establish that one is an Indian for purposes of 18 U.S.C. § 1152.

11. Although two-year-old JANE DOE is not an enrolled member of the tribe, the government proved beyond a reasonable doubt that she is a de facto member of the Colorado River Indian Tribe.

On August 8, 1995, Keys was sentenced to three years probation. Keys appealed his conviction to the district court the same day. On January 24, 1996, the district court affirmed the conviction, finding that the magistrate judge's findings and conclusions were

---

**2.** Keys' daughter was referred to as "Jane Doe" during Keys' prosecution and trial.

supported by the record and applicable law and holding that the Federal Enclaves Act, 18 U.S.C. § 1152, is constitutional and that Keys' prosecution did not deny him equal protection under the law. Keys timely filed his notice of appeal on January 29, 1996.

## STANDARD OF REVIEW

■ Whether Keys' daughter is an "Indian" under 18 U.S.C. § 1152 is a mixed question of law and fact which is reviewed de novo. *United States v. Eric B.*, 86 F.3d 869, 877 (9th Cir.1996). A mixed question of law and fact occurs when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. *Pullman–Standard v. Swint*, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982).

■ The constitutionality of a statute is a question of law reviewed de novo. *United States v. Sahhar*, 56 F.3d 1026, 1028 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 400, 133 L.Ed.2d 320 (1995).

## ANALYSIS

1. *District Court Determination that Keys' Daughter was an "Indian" under 18 U.S.C. § 1152.*

■ Keys argues on appeal that his daughter was not an "Indian" because she was not an enrolled member of the Colorado River Indian Tribe and was only one-quarter Indian. "The Federal Enclaves Act provides, among other things, for the prosecution of crimes committed in Indian Country by non-Indians against Indians."[3] *United States v. Hester*, 719 F.2d 1041, 1042 (9th Cir.1983). "[T]he term 'Indian' has not been statutorily defined but instead has been judicially explicated over the years. The test, first suggested in *United States v. Rogers*, 45 U.S. 567, 4 How. 567, 11 L.Ed. 1105 (1845),

and generally followed by the courts, considers (1) the degree of Indian blood; and (2) tribal or government recognition as an Indian." *United States v. Broncheau*, 597 F.2d 1260, 1263 (9th Cir.), *cert. denied,* 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979). While tribal enrollment is one means of establishing status as an "Indian" under 18 U.S.C. § 1152, it is not the sole means of proving such status. *Id.* at 1262–63.

■ Here, Keys' daughter is one-fourth Indian and, as is amply demonstrated by the magistrate judge's findings, has been treated by the Colorado River Indian Tribe and both her parents as a member of the tribe. Her lack of enrollment at the age of two does not control the determination of her "Indian" status. The district court properly found that she was an "Indian" under the Federal Enclaves Act.

2. *Violation of the Equal Protection Clause.*

■ Keys argues that, if enrollment is not a prerequisite to "Indian" status under § 1152, his prosecution is based on the race of the victim, in violation of the Equal Protection Clause. In *United States v. Antelope*, 430 U.S. 641, 646, 97 S.Ct. 1395, 1398, 51 L.Ed.2d 701 (1977), the Supreme Court held that federal jurisdiction based on "Indian" status did not violate the Equal Protection Clause because the term "Indian" describes a political group or membership, not a racial group. Enrollment is not the only means to establish membership in a tribal political entity. Here, the daughter's "Indian" status is based on the recognition by tribal institutions of her membership in the tribe. Her classification as an "Indian" is not race-based and, consequently, Keys' prosecution under § 1152 does not violate the Equal Protection Clause.

---

**3.** The Federal Enclaves Act, 18 U.S.C. § 1152, provides:

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to Indian Country.

This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

### 3. Constitutionality of the Federal Enclaves Act.

■ Keys argues that the Federal Enclaves Act is an unconstitutional attempt by Congress to apply a general criminal code to the activities of non-Indians in Indian Country. In *United States v. Lomayaoma*, 86 F.3d 142, 146 (9th Cir.) *cert. denied*, —— U.S. ——, 117 S.Ct. 272, 136 L.Ed.2d 196 (1996), we held that the Indian Major Crimes Act, 18 U.S.C. § 1153, which grants federal courts exclusive jurisdiction over certain crimes committed by Indians in Indian country, was a constitutional exercise of power by Congress under the Indian Commerce Clause. We noted that in *Seminole Tribe v. Florida*, —— U.S. ——, ——, 116 S.Ct. 1114, 1126, 134 L.Ed.2d 252 (1996), the Supreme Court reaffirmed the principle that Indian commerce is under the exclusive control of the Federal government. *Lomayaoma*, 86 F.3d at 145. "[T]he Indian Commerce Clause confers more extensive power on Congress than does the Interstate Commerce Clause." *Id.* (citation omitted):

> Historically, Congress has held plenary authority to regulate Indian affairs. This power "to deal with the special problems of Indians is drawn both explicitly and implicitly from the Constitution itself. Article I, § 8, cl. 3, provides Congress with the power to 'regulate Commerce ... with the Indian Tribes,' and thus, to this extent, singles Indians out as a proper subject for separate legislation."

*Id.* (quoting *Morton v. Mancari*, 417 U.S. 535, 551–52, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974)). The Federal Enclaves Act grants federal courts jurisdiction over crimes committed by or against an "Indian" in "Indian Country." Just as the Indian Major Crimes Act is within Congress's authority to regulate Indian criminal activity in Indian Country, the Federal Enclaves Act is within Congress's power to regulate crimes committed by or against Indians in Indian country.

### CONCLUSION

Keys' conviction is AFFIRMED.