RYDER v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:RYDER v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 RYDER v. STATE
2021 OK CR 11
Case Number: PCD-2020-613
Decided: 04/29/2021
JAMES CHANDLER RYDER, Petitioner v. STATE OF OKLAHOMA, Respondent.
Cite as: 2021 OK CR 11, __ __

 

 

OPINION GRANTING SECOND APPLICATION FOR
POST-CONVICTION RELIEF

LUMPKIN, JUDGE:[1]

 

¶1 Petitioner James Chandler Ryder was convicted of two (2) counts of First Degree Murder (21 O.S.1991, § 701.7), Case No. CF-99-147, in the District Court of Pittsburg County. In Count I, Petitioner was sentenced to life imprisonment without parole. In Count II, the jury found the existence of two (2) aggravating circumstances and recommended the punishment of death. The trial court sentenced accordingly. This Court affirmed the judgment and sentence in Ryder v. State, 2004 OK CR 2, 83 P.3d 856. Petitioner's first application for post-conviction relief was denied by this Court in Ryder v. State, (Okl.Cr.2004) opinion not for publication, Case No. PCD-2002-257. The United States Supreme Court denied certiorari in Ryder v. Oklahoma, 543 U.S. 886 (2004). On September 8, 2020, Petitioner filed this second and successive application for post-conviction relief.

 

¶2 Pursuant to 22 O.S.2011, § 1089(D)(8) "if a subsequent application for post-conviction relief is filed after filing an original application, the Court of Criminal Appeals may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously in a previously considered application filed under this section, because the factual or legal basis for the claim was unavailable."

¶3 For purposes of the Capital Post-Conviction Procedure Act, a legal basis of a claim is unavailable if: (1) it was not recognized by or could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date; or (2) it is a new rule of constitutional law that was given retroactive effect by the United States Supreme Court or a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date; or (2) it is a new rule of constitutional law that was given retroactive effect by the United States Supreme Court or a court of appellate jurisdiction of this state and had not been announced on or before that date. A factual basis of a claim is unavailable if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date. 22 O.S.2011, § 1089(D)(9).

¶4 In his sole proposition of error, Petitioner argues that pursuant to McGirt v. Oklahoma, ___ U.S. ___, 140 S.Ct. 2452 (2020), the State of Oklahoma did not have jurisdiction to prosecute, convict, and sentence him for the murders of Daisy and Sam Hallum, citizens of the Choctaw nation when such crimes occurred within the boundaries of the Choctaw Reservation.

¶5 Under the particular facts and circumstances of this case, and considering the pleadings before this Court, we find Petitioner's claim is properly before this Court as the claim could not have been previously presented because the legal basis for the claim was unavailable. Bosse v. State, 2021 OK CR 3, __ P.3d __. ("McGirt provides a previously unavailable legal basis for [the jurisdictional] claim. Subject-matter jurisdiction may--indeed, must--be raised at any time. No procedural bar applies, and this issue is properly before us. 22 O.S.2011, §§ 1089(D)(8)(a), 1089(D)(9)(a)." Id., at ¶ 22, ___ P.3d at ___. [2]

 

¶6 Petitioner's claim raises two separate questions: (a) the Indian status of the victims, and (b) whether the crime occurred in Indian Country. These issues require fact-finding. We therefore remanded this case to the District Court of Pittsburg County for an evidentiary hearing.

 

¶7 Recognizing the historical and specialized nature of this remand for evidentiary hearing, we requested the Attorney General and District Attorney work in coordination to effect uniformity and completeness in the hearing process. Upon Petitioner's presentation of prima facie evidence as to the legal status of the victims as Indian and as to the location of the crime in Indian Country, the burden shifts to the State to prove it has subject matter jurisdiction. The District Court was ordered to determine whether the victims had some Indian blood and were recognized as Indian by a tribe or the federal government. The District Court was also directed to determine whether the crime occurred in Indian Country. The District Court was directed to follow the analysis set out in McGirt to determine (1) whether Congress established a reservation for the Choctaw Nation, and (2) if so, whether Congress specifically erased those boundaries and disestablished the reservation. In so doing, the District Court was ordered to consider any evidence the parties provided, including but not limited to treaties, statutes, maps, and/or testimony.

¶8 We also directed the District Court that in the event the parties agreed as to what the evidence would show with regard to the questions presented, the parties may enter into a written stipulation setting forth those facts upon which they agree and which answer the questions presented and provide the stipulation to the District Court. The District Court was also ordered to file written findings of facts and conclusions of law with this Court.

¶9 An evidentiary hearing was timely held before the Honorable Tim Mills, Associate District Judge, and a Court Order with Findings of Fact and Conclusion of Law in Accordance with Order Remanding for Evidentiary Hearing issued September 25, 2020 was timely filed with this Court. The record indicates that appearing before the District Court were attorneys from the offices of the Attorney General of Oklahoma, the Pittsburg County District Attorney, Federal Public Defender, and counsel for the Choctaw Nation.

¶10 In its Order to this Court, the District Court stated in pertinent part that the parties had entered into a stipulation that each of the victims, Daisy and Sam Hallum, "had 1/16th Indian blood quantum and was enrolled as a Choctaw Nation citizen at the time of the crimes." The District Court noted that "[t]he Choctaw Nation of Oklahoma/CDIB Tribal Membership certifications for Daisy and Sam Hallum" were attached to the stipulation and that the parties agree they should be admitted into the record of the case.

¶11 The District Court found, based upon treaties and documents provided to the court, that a reservation was established by the federal government for the Choctaw Nation. The District Court further found "[n]o evidence was presented to show that Congress erased or disestablished the boundaries of the Choctaw Nation Reservation or that the State of Oklahoma has jurisdiction in this matter . . . Therefore, the crimes occurred in Indian Country."

¶12 Both Petitioner and the State were given the opportunity to file response briefs addressing issues from the evidentiary hearing.[3] Petitioner argues in part that this Court should affirm the District Court's factual findings under an abuse of discretion standard. See Young v. State, 2000 OK CR 17, ¶ 109, 12 P.3d 20, 48 ("we afford the trial court's findings on factual issues great deference and will review its findings applying a deferential abuse of discretion standard"). In addition to referencing the stipulations as to the victims' Indian status and the location of the crime as Indian country, Petitioner presents argument and authority, which was presented to the District Court, supporting the District Court's conclusion that the Choctaw reservation has not been disestablished. Petitioner asserts this Court should conclude that the State lacks subject matter jurisdiction over his case.

¶13 Petitioner also responds to an argument first presented by the State at the evidentiary hearing that under the General Crimes Act (18 U.S.C. § 1152), the State and the federal government have concurrent jurisdiction over crimes committed by a non-Indian defendant against an Indian victim. The State raised the argument with the intent to preserve the argument for appeal. Defense counsel objected to the preservation of the argument on grounds that the issue was not a part of this Court's remand order for evidentiary hearing. The issue of concurrent jurisdiction formed no part of the trial court's order.

¶14 In his response brief, Petitioner argues: 1) the issue of concurrent jurisdiction is not properly before this Court as the issue is beyond the scope of the supplemental briefing; 2) the issue is not properly before this Court as it is beyond the scope of this Court's order on evidentiary hearing; and 3) the issue of concurrent jurisdiction between the State and federal governments fails on the merits.

¶15 We find Petitioner has read our Order remanding for an evidentiary hearing too narrowly. Our Order allowed the parties to address "issues pertinent to the evidentiary hearing" in the supplemental briefs. Pursuant to our Order, "[u]pon the Appellant's presentation of prima facie evidence as to the victim's legal status as an Indian and as to the location of the crime in Indian Country, the burden shifts to the State to prove it has subject matter jurisdiction." Here, the District Court found that the victims in this case were Indians and that the crimes occurred in Indian Country. The State now has the burden of showing it has subject matter jurisdiction. An argument of concurrent jurisdiction is relevant in potentially meeting that burden. As the State raised the issue of concurrent jurisdiction at the evidentiary hearing, although the issue seemingly played no part in the trial court's ruling, we find the issue is now properly before this Court for our consideration.

¶16 The State's argument hinges on its reading of the General Crimes Act which it claims confers federal jurisdiction over Petitioner's case, but does not explicitly deprive the State of concurrent jurisdiction. The State acknowledges that courts in other states have held that states lack jurisdiction over non-Indians who commit crimes against Indians in Indian country, but argues the reasoning of those cases lacks merit. Relying on civil cases, the State asserts that states have jurisdiction over non-Indians on Indian Country even when they are interacting with Indians so long as the jurisdiction would not "interfere with reservation self-government or impair a right granted or reserved by federal law" citing County of Yakima v. Confederated Tribes and Bands of Yakima Indian Nation, 502 U.S. 251, 257-58 (1992). The State argues that under the plain language of the General Crimes Act, state jurisdiction over non-Indians who victimize Indians does not interfere with the federal government's concurrent jurisdiction over such crimes.

¶17 In anticipation of the State's argument, Petitioner has filed a response rejecting the State's theory of concurrent jurisdiction. Petitioner asserts that under a well-defined federal statutory scheme and decisions by the United States Supreme Court, jurisdiction in Indian Country has historically been exercised by only tribal and federal courts, and states acquire jurisdiction only by express grants. No statute has granted the State of Oklahoma criminal jurisdiction over crimes committed by or against Indians in Indian Country.

¶18 Petitioner has not claimed to be Indian. Therefore, the issue before us is state jurisdiction over non-Indians who victimize Indians in Indian Country. Having thoroughly reviewed both briefs and authority cited therein, we find the State does not have the concurrent jurisdiction to prosecute Petitioner.

¶19 Under the federal Major Crimes Act (MCA), "[a]ny Indian who commits" certain enumerated offenses "against the person or property of another Indian or any other person" "within Indian country" "shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States." 18 U.S.C. § 1153(a).

¶20 Under the General Crimes Act (GCA), 18 U.S.C. § 1152, federal courts have jurisdiction over a broader range of crimes committed by or against Indians in Indian Country. Section 1152 specifically provides:

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

¶21 In McGirt, the Supreme Court ruled that federal criminal jurisdiction under both the MCA and the GCA is exclusive of state jurisdiction. 140 S.Ct. at 2479. The Supreme Court stated:

But the MCA applies only to certain crimes committed in Indian country by Indian defendants. A neighboring statute provides that federal law applies to a broader range of crimes by or against Indians in Indian country. See 18 U.S.C. § 1152. States are otherwise free to apply their criminal laws in cases of non-Indian victims and defendants, including within Indian country. See McBratney, 104 S.Ct. at 624.

Id. (internal citation omitted).

¶22 In United States v. McBratney, 104 U.S. 621, 624 (1881), the Supreme Court held that federal jurisdiction over crimes committed in Indian Country does not extend to crimes committed by non-Indians against non-Indians. [4]

 

¶23 "[C]riminal offenses by or against Indians have been subject only to federal or tribal laws . . . except where Congress in the exercise of its plenary and exclusive power over Indian affairs has 'expressly provided that State laws shall apply.'" Washington v. Confederated Bands and Tribes of the Yakima Indian Nation, 439 U.S. 463, 470-71 (1979)(internal citation omitted).

 

¶24 "[S]tate criminal jurisdiction in Indian country is limited to crimes committed 'by non-Indians against non-Indians ... and victimless crimes by non-Indians'". Ross v. Neff, 905 F.2d 1349, 1353 (10th Cir. 1990) (quoting Solem v. Bartlett, 465 U.S. 463, 465 n. 2 (1984)).

¶25 This Court recognized in State v. Klindt, 1989 OK CR 75, ¶ 3, 782 P.2d 401, 402 that "[j]urisdiction over Indian Country has been given to either the states or the federal government through statutes." This Court went on to explain why the State of Oklahoma does not have jurisdiction over crimes committed by or against an Indian in Indian Country.

The Act of August 15, 1953, Pub.L. No. 83--280, 67 Stat. 588 (1953) provided the states permission to assume criminal and civil jurisdiction over any "Indian Country" within the borders of the state. Under this public law, Oklahoma could have, without the consent of the affected Indians, assumed jurisdiction over any Indian Country in the state by constitutional amendment. Because of Title IV of the Civil Rights Act of 1968, 25 U.S.C. §§ 1321--1326 (1970), however, the consent of the affected Indians is now required before a State is permitted to assume criminal and civil jurisdiction over "Indian Country." See 25 U.S.C. §§ 1321(a) and 1322(a) (1970); . . . The State of Oklahoma has never acted pursuant to Public Law 83--280 or Title IV of the Civil Rights Act to assume jurisdiction over the "Indian Country" within its borders. . . . Accordingly, the State of Oklahoma does not have jurisdiction over crimes committed by or against an Indian in Indian Country.

1989 OK CR 75, ¶ 3, 782 P.2d at 402-403 (internal citations omitted).

¶26 In Cravatt v. State, 1992 OK CR 6, ¶ 16, 825 P.2d 277, 279-280, this Court again recognized that the State of Oklahoma has never acted pursuant to Public Law 83-280, stating, "the State of Oklahoma does not have jurisdiction over crimes committed by or against an Indian in Indian Country".

¶27 The fact that Petitioner is not Indian does not exempt him from the above cited law. The cases make clear, that absent an express exception by Congress for state jurisdiction over crimes by or against Indians in Indian Country, federal law applies. See Donnelly v. United States, 228 U.S. 243, 272 (1913) (predecessor to GCA applies "with respect to crimes committed by white men against the persons or property of the Indian tribes while occupying [Indian land]")[5]; United States v. Prentiss, 273 F.3d 1277, 1278 (10th Cir. 2001) ("18 U.S.C. § 1152 establishes federal jurisdiction over 'interracial' crimes, those in which the defendant is an Indian and the victim is a non-Indian, or vice-versa").[6]

 

¶28 Applying the above principles to the present case, the State of Oklahoma does not have jurisdiction concurrent with the federal government to prosecute Petitioner. See Bosse, 2021 OK CR 3, ¶¶ 23-28, ___ P.3d at ___ (rejecting concurrent jurisdiction argument).

 

¶29 Turning to the District Court's Order on evidentiary hearing, we find the court's conclusions that the victims in this case were Indian and specifically members of the Choctaw Nation; that the crimes occurred in Indian Country as a reservation was established by the federal government for the Choctaw Nation; and that no evidence was presented to show that Congress erased or disestablished the boundaries of the Choctaw Nation Reservation, as set out in McGirt, are supported by the record of the evidentiary hearing. Reviewing the District Court's conclusion that the State of Oklahoma did not have jurisdiction in this case for an abuse of discretion, we find no abuse of the court's discretion. See State v. Delso, 2013 OK CR 5, ¶ 5, 298 P.3d 1192, 1194. After thorough consideration of the entire record before us on appeal we find that under the law and the evidence relief is warranted. Petitioner has met his burden of establishing the status of his victims as Indian on the date of the crime. We also find the District Court appropriately applied McGirt to determine that Congress did establish a Choctaw Reservation and that no evidence was presented showing that Congress explicitly erased or disestablished the boundaries of the Choctaw Nation or that the State of Oklahoma had jurisdiction in this matter. We find the State of Oklahoma did not have jurisdiction to prosecute Petitioner in this matter. The Judgments and Sentences in this case are hereby reversed and the case remanded to the District Court of Pittsburg County with instructions to dismiss the case.

DECISION

¶30 The JUDGMENTS and SENTENCES are REVERSED AND REMANDED with instructions to Dismiss. The MANDATE is not to be issued until twenty (20) days from the delivery and filing of this decision.[7]

 

AN APPEAL FROM THE DISTRICT COURT OF PITTSBURG COUNTY
THE HONORABLE TIM MILLS, ASSOCIATE DISTRICT JUDGE

 

 

 
 
 
 APPEARANCES BEFORE THE DISTRICT COURT
 
 
 APPEARANCES ON APPEAL
 
 
 
 
  
 
 
  
 
 
 
 
 MEGHAN LeFRANCOIS
 MICHAEL W. LIEBERMAN
 ASST. FEDERAL PUBLIC DEFENDERS,
 WESTERN DISTRICT OF OKLAHOMA
 215 A. McGEE, STE. 707
 OKLA. CITY, OK 73102
 COUNSEL FOR DEFENDANT
 
 
 MEGHAN LeFRANCOIS
 MICHAEL W. LIEBERMAN
 ASST. FEDERAL PUBLIC DEFENDERS,
 WESTERN DISTRICT OF OKLAHOMA
 215 DEAN A. McGEE, STE. 707
 OKLA. CITY, OK 73102
 COUNSEL FOR PETITIONER
 
 
 
 
  
 
 
  
 
 
 
 
 CHUCK SULLIVAN
 DISTRICT ATTORNEY
 109 E. CARL ALBERT PRKWY
 McALESTER, OK 74501
 
 
 MIKE HUNTER
 ATTORNEY GENERAL OF OKLAHOMA
 JULIE PITTMAN
 ASST. ATTORNEY GENERAL
 313 N.E. 21ST ST.
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR THE STATE
 
 
 
 
  
 
 
  
 
 
 
 
 MIKE HUNTER
 ATTORNEY GENERAL OF OKLAHOMA
 JULIE PITTMAN
 CAROLINE HUNT
 ASST. ATTORNEYS GENERAL
 313 N.E. 21ST ST.
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR THE STATE
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 JACOB KEYES
 P.O. BOX 1210
 DURANT, OK
 COUNSEL FOR THE CHOCTAW NATION
 
 
  
 
 
 

 

OPINION BY: LUMPKIN, J.
KUEHN, P.J..: Concur in Results
ROWLAND, V.P.J.: Specially Concur
LEWIS, J.: Specially Concur
HUDSON, J.: Specially Concur

FOOTNOTES

[1] As stated in my separate writing in Bosse v. State, 2021 OK CR 3, __ P.3d __ (Lumpkin, J., concurring in result), I am bound by my oath and adherence to the Federal-State relationship under the U.S. Constitution to apply the edict of the majority opinion in McGirt v. Oklahoma, 140 S. Ct. 2452 (2020). However, I continue to share the position of Chief Justice Roberts' dissent in McGirt, that at the time of Oklahoma Statehood in 1907, all parties accepted the fact that Indian reservations in the state had been disestablished and no longer existed.

[2] While the majority in McGirt alluded to the availability of procedural bars, Chief Justice Roberts correctly noted in his dissent at footnote 9 that subject matter jurisdiction is never waived under Oklahoma law. McGirt, 140 S. Ct. 2452, 2501 n.9 (2020) (Roberts, C.J., dissenting). See Wallace v. State, 1997 OK CR 18, ¶ 15, 935 P.2d 366, 372. While Art. 7 of the Oklahoma Constitution vests the district courts of Oklahoma with "unlimited original jurisdiction of all justiciable matters," the federal government has pre-empted the field as it relates to major crimes committed by or against Indians in Indian country.

[3] The State additionally filed a Motion to File Supplemental Brief in which the State cites to an order from the Tenth Circuit Court of Appeals which denied a Petitioner's motion to file a second or successive habeas petition. We grant the State's request to file the supplemental brief but find its reasoning is not persuasive. In In re: David Brian Morgan, Tenth Circuit No. 20-6123 (unpublished, Sept. 18, 2020) the Court denied the order after examining its rule regarding the granting of these motions. The Court found that the petitioner failed to show his application actually relied upon McGirt, and even if it did, McGirt did not create a "new rule of constitutional law" that the Supreme Court "made retroactive to cases on collateral review," but simply interpreted acts of Congress in order to determine if a federal statute applied to a given situation. We find this analysis inapposite to the jurisdictional issue raised by Petitioner herein.

[4] In McBratney, the question before the Supreme Court was "whether the [federal court] had jurisdiction of the crime of murder committed by a white man upon a white man" on a reservation in Colorado. 104 U.S. at 624. The Supreme Court said that "[w]henever, upon the admission of a State into the Union, Congress has intended to except out of it an Indian reservation, or the sole and exclusive jurisdiction over that reservation, it has done so by express words." 104 U.S. at 623-624. The Supreme Court found that by its admission into the Union by Congress, no exceptions had been made for the State of Colorado.

[5] In Donnelly, the Supreme Court specifically considered the question of whether "the killing of an Indian by a person not of Indian blood, when committed upon an Indian reservation within the limits of a State, cognizable in the Federal courts?" Id. at 269.

[6] In Prentiss, the Tenth Circuit considered whether the government's failure to allege the Indian/non-Indian statuses of the victim and the defendant contributed to the jury's verdict. Id. at 1283.

[7] By withholding the issuance of the mandate for 20 days, the State's request for time to determine further prosecution is rendered moot.

 

 

KUEHN, PRESIDING JUDGE, CONCURRING IN RESULT:

¶1 I agree with the Majority that the State of Oklahoma had no jurisdiction to try Petitioner, and his case must be dismissed. This Court recently found that the Choctaw Reservation was not disestablished, and is Indian Country. Sizemore v. State, 2021 OK CR 6, ¶¶ 15-16. Oklahoma does not have jurisdiction to prosecute crimes committed against Indians in Indian Country. Bosse v. State, 2021 OK CR 3, ¶ 5; 18 U.S.C. § 1152. Furthermore, this Court has determined that the State does not have concurrent jurisdiction over crimes committed by or against Indians in Indian Country. Bosse, 2021 OK CR 3, ¶ 28. Because these issues have already been decided, I find the Majority's discussion of both reservation status and concurrent jurisdiction superfluous dicta. I recognize with regret the painful effect this decision will have on the victims' family.

 

 

ROWLAND, VICE PRESIDING JUDGE, SPECIALLY CONCURRING:

¶1 I agree with the majority that the U.S. Supreme Court's decision in McGirt v. Oklahoma, 591 U.S.___, 140 S.Ct. 2452 (2020), unfortunately, requires dismissing these two murder convictions, one of which resulted in a sentence of death. I write separately to make clear that although footnote 2 quotes Chief Justice Roberts' mention of subject matter jurisdiction, that is not what is implicated here. As I set forth in my separate writing to Bosse v. State, 2021 OK CR 3, ___ P.3d ___, the federal Major Crimes Act does not, indeed cannot, divest Oklahoma courts of subject matter jurisdiction granted by the Oklahoma Constitution and statutes enacted pursuant thereto. This federal criminal statute, based upon the plenary power of Congress to regulate affairs with Indian tribes, is instead an exercise of federal territorial jurisdiction which preempts the authority of Oklahoma state courts under these circumstances.

 

 

LEWIS, JUDGE, SPECIALLY CONCURRING:

¶1 Pursuant to my special writings in Bosse v. State, 2021 OK CR 3, ___ P.3d ___ and Hogner v. State, 2021 OK CR 4, ___ P.3d ___, I specially concur. Following the precedent of McGirt v. Oklahoma, 140 S.Ct. 2452 (2020), Oklahoma has no jurisdiction over persons who commit crimes against Indians in Indian Country. This crime occurred within the historical boundaries of the Choctaw Nation Reservation and that Reservation has not been expressly disestablished by the United States Congress. Additionally, the crime occurred against Indian victims, thus the jurisdiction is governed by the Major Crimes Act found in the United States Code.

¶2 Oklahoma, therefore, has no jurisdiction, concurrent or otherwise, over the petitioner in this case. Thus, I concur that this case must be reversed and remanded with instructions to dismiss. Jurisdiction is in the hands of the United States Government.

 

 

HUDSON, J., SPECIALLY CONCURRING:

¶1 Today's decision applies McGirt v. Oklahoma, 140 U.S. 2452 (2020) to the facts of this case and dismisses two first degree murder convictions, one that resulted in a death sentence, from the District Court of Pittsburg County. I fully concur in the majority's opinion based on the stipulations below concerning the victims' Indian status and the location of these crimes within the historic boundaries of the Choctaw Reservation. Under McGirt, the State has no jurisdiction to prosecute Petitioner. Instead, Petitioner must be prosecuted in federal court. I therefore as a matter of stare decisis fully concur in today's decision. 

¶2 I also join Judge Rowland's observation in his special writing that the Major Crimes Act does not affect the State of Oklahoma's subject matter jurisdiction in criminal cases but, rather, involves the exercise of federal criminal jurisdiction to effectively preempt the exercise of similar state authority. Further, I maintain my previously expressed views on the significance of McGirt, its far-reaching impact on the criminal justice system in Oklahoma and the need for a practical solution by Congress. See Bosse, 2021 OK CR 3, __P.3d__ (Hudson, J., Concur in Results); Hogner v. State, 2021 OK CR 4, __P.3d__ (Hudson, J., Specially Concurs); and Krafft v. State, No. F-2018-340 (Okl.Cr., Feb. 25, 2021) (Hudson, J., Specially Concurs) (unpublished).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2021 OK CR 21, STATE ex rel. DISTRICT ATTORNEY v. WALLACE
Cited


 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1989 OK CR 75, 782 P.2d 401, STATE v. KLINDT
Discussed at Length
 1992 OK CR 6, 825 P.2d 277, CRAVATT v. STATE
Discussed
 2004 OK CR 2, 83 P.3d 856, RYDER v. STATE
Discussed
 2013 OK CR 5, 298 P.3d 1192, STATE v. DELSO
Discussed
 2021 OK CR 3, 484 P.3d 286, BOSSE v. STATE
Discussed at Length
 2021 OK CR 4, HOGNER v. STATE
Discussed
 2021 OK CR 6, 485 P.3d 867, SIZEMORE v. STATE
Cited
 1997 OK CR 18, 935 P.2d 366, Wallace v. State
Discussed
 2000 OK CR 17, 12 P.3d 20, 71 OBJ 2286, Young v. State
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 701.7, Murder in the First Degree
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 1089, Post-Conviction Relief for Death Penalty Conviction - Grounds for Appeal
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA