NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-35127 |
| Plaintiff - Appellee, | D.C. Nos.  4:08-cv-00029-SEH |
| v. | 4:03-cr-00145-SEH-1 |
| RONNIE LYNN SMITH, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted June 9, 2011
Portland, Oregon

Before: FISHER, GOULD and PAEZ, Circuit Judges.

Ronnie Lynn Smith appeals the district court's denial of his motion to

vacate, set aside or correct his sentence under 28 U.S.C. § 2255. We affirm.

1. Indian status. Smith was convicted of assault with a dangerous weapon

in violation of 18 U.S.C. §§ 113(a)(3) and 1153 for the stabbing of Lee Harrison

Tuttle, an Indian person. To convict Smith under § 1153, the jury was required to

---

[*]This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

find beyond a reasonable doubt that Smith was an Indian. *See* 18 U.S.C. § 1153(a) (subjecting "[a]ny Indian" who commits one of 14 major crimes to the criminal laws and penalties applicable in areas of exclusive federal jurisdiction). Smith argues under *United States v. Bruce*, 394 F.3d 1215 (9th Cir. 2005), *United States v. Cruz*, 554 F.3d 840 (9th Cir. 2009), and *United States v. Maggi*, 598 F.3d 1073 (9th Cir. 2010), that the government presented insufficient evidence of his Indian status.[1] We disagree.

"The generally accepted test for Indian status considers '(1) the degree of Indian blood; and (2) tribal or government recognition as an Indian.'" *Bruce*, 394 F.3d at 1223 (quoting *United States v. Keys*, 103 F.3d 758, 761 (9th Cir. 1996)). "[F]our factors . . . govern the second prong; those four factors are, 'in declining order of importance, evidence of the following: 1) tribal enrollment; 2) government recognition formally and informally through receipt of assistance reserved only to Indians; 3) enjoyment of the benefits of tribal affiliation; and 4) social recognition

---

[1]We reject the government's argument that *Teague v. Lane*, 489 U.S. 288 (1989), precludes us from applying *Bruce*, *Cruz* and *Maggi*, which were decided after Smith's trial. *Teague* bars the retroactive application of new procedural rules under certain circumstances. *See* 489 U.S. at 310. It does not apply to new substantive rules, including "decisions that narrow the scope of a criminal statute by interpreting its terms." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). Because *Bruce*, *Cruz* and *Maggi* interpret the substantive scope of § 1153, the *Teague* bar is inapplicable.

as an Indian through residence on a reservation and participation in Indian social life.'" *Cruz*, 554 F.3d at 846 (quoting *Bruce*, 394 F.3d at 1224).

The government presented sufficient evidence of Smith's Indian blood to satisfy *Bruce*'s first prong. We have held this requirement satisfied by as little as 1/8 (12.5%) Indian blood. *See Maggi*, 598 F.3d at 1080; *Bruce*, 394 F.3d at 1223. Here, the government presented evidence that Smith has 25/128 (19.5%) Assiniboine and Sioux blood, well in excess of the 1/8 we approved in *Bruce* and *Maggi*. We acknowledge that Smith's § 2255 motion attached a letter from the Fort Peck Tribes Enrollment Office stating that Smith "does not meet the required blood quantum of 1/8 for Associate Membership [in the Fort Peck tribes], nor 1/4 Full Enrollment." But this evidence was not presented at trial, and even if it had been, a rational trier of fact could have chosen to credit the more specific, higher figure established by the government's evidence.

The government also presented sufficient evidence of tribal or government recognition of Smith as an Indian to satisfy *Bruce*'s second prong. There was evidence that Smith at one time enjoyed formal tribal enrollment, the most important indicator of tribal recognition of a defendant's Indian status. *See Cruz*, 554 F.3d at 846. As early as 1990, Smith was enrolled as an associate member of the Assiniboine and Sioux tribes, a status available to persons of "one-eighth (1/8)

3

or more but less than one-quarter (1/4), Assiniboine and/or Sioux blood born to any member of the Assiniboine and Sioux Tribes."  Sioux & Assiniboine Ord. No. 1, § 1(e).  Although *Cruz* and *Maggi* held that "descendant status" in the Blackfeet tribe, available to the children of formally enrolled Blackfeet members, was insufficient to show tribal enrollment, *see Cruz*, 554 F.3d at 847; *Maggi*, 598 F.3d at 1082, Smith's membership in the Sioux and Assiniboine tribes was more formal than Cruz and Maggi's descendant status.  Smith was actually enrolled as a tribe member by virtue of his own quantum of Indian blood.  He was not a mere descendant eligible for tribal affiliation by virtue of a parent's enrollment alone. *Compare* Blackfeet Const. art. II, am. III., § 1 (specifying that individuals born after 1962 must have 1/4 Blackfeet blood to be enrolled as members, without provision for any "descendant" membership), *with* Sioux & Assiniboine Ord. No. 1, § 1(d) & (e) (providing that "[e]ach child of one-fourth (1/4) or more Assiniboine and/or Sioux blood born after [October 1, 1960] to any member of the Assiniboine and Sioux Tribes" qualifies for full membership, and that "[e]ach child of one-eighth (1/8) or more but less than one-quarter (1/4), Assiniboine and/or Sioux blood born to any member of the Assiniboine and Sioux Tribes" qualifies for associate membership).

4

We recognize that Smith relinquished his tribal enrollment in 1996. This decision does not definitively show, however, that Smith or the tribe ceased to consider Smith an Indian person. *See Cruz*, 554 F.3d at 850 (holding that *Bruce* requires an analysis of Indian status from the perspective of the individual as well as from the perspective of the tribe). A tribal investigator, Tom Atkinson, testified he had known Smith for most of his life, that Smith had lived on the reservation that entire time and that, as far as Atkinson knew, Smith held himself out to be an Indian person. A rational jury could have concluded that because Smith was once formally enrolled in the tribe and continued to hold himself out as an Indian even after his enrollment ended, both Smith and the tribe continued to view Smith as an Indian despite his unexplained decision to relinquish his formal enrolled status.

We therefore conclude there was no deficiency of proof on the Indian status element.

2. <u>Counsel's failure to dispute Smith's Indian status</u>. Smith contends trial counsel and appellate counsel provided ineffective assistance by failing to challenge the sufficiency of the evidence that he is an Indian. We disagree. Smith was tried before *Bruce*, *Cruz* and *Maggi* were decided, and pre-*Bruce* authority gave counsel little indication that a challenge to the evidence of Indian status might prove successful. *See Keys*, 103 F.3d at 761 (affirming an Indian status finding

5

without extensive discussion).  Counsel's failure to raise a legal argument that lacked obvious merit did not constitute ineffective assistance.  *See United States v. Ratigan*, 351 F.3d 957, 965 (9th Cir. 2003) (holding that the "failure to recognize every possible legal argument" did not render counsel's performance constitutionally deficient).

3.  Counsel's failure to request a clarifying jury instruction.  Smith argues trial counsel rendered ineffective assistance by failing to request a jury instruction clarifying the definition of the term "Indian."  He argues that the jury should have been instructed to apply the standard set forth in *Bruce* and *Cruz*, including the basic two-prong Indian status test and the four subfactors used to evaluate the second prong.  But we decline to fault counsel for not proposing jury instructions whose content was not developed until well after trial.  *See Strickland v. Washington*, 466 U.S. 668, 690 (1984) ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.").  Although it might have been preferable to provide the jury with a clarifying instruction on the meaning of the term "Indian" – especially in light of the jury note expressing confusion as to the significance of Smith's relinquishment of tribal enrollment – there was little useful clarification that counsel, operating

6

pre-*Bruce*, could have proposed.  We therefore conclude counsel performed adequately.

4.  Voir dire statement.  In questioning prospective jurors during voir dire, the district court stated:

> I want to follow up on this topic that I addressed initially with you concerning ethnic background of persons and other topics of that sort. *The defendant in this case is in fact a Native American.*  A very substantial number of the persons whose [sic] appear and give testimony at this trial may be Native Americans as well. . . . Do any of you feel that you have such strong views on the subject of ethnic background or tribal affiliation or matters of that sort that you could not serve as a fair and impartial juror in this case?

(Emphasis added.)

Smith contends the court's remark that he was a Native American "had the effect of relieving the government of its burden of proving . . . that Smith is an Indian."  We disagree.  Given the context of the district court's statement, the prospective jurors likely understood the court's remark as part of an inquiry into potential prejudice, not as a comment on forthcoming evidence.  Moreover, at the close of trial, the court instructed the jury not to "read into . . . anything the court may have said or done any suggestion as to what verdict you should return."  Although this instruction was rather general, it was sufficient to cure any potential misimpression arising from the court's comment.  *See United States v. McGill*, 604

7

F.2d 1252, 1255 (9th Cir. 1979) (holding that a judge's comment on the issues in the case, although "not technically correct," could be cured by instruction).

**AFFIRMED.**