FILED
**United States Court of Appeals**
**Tenth Circuit**

**July 23, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.                                                                                    No. 23-5027

CRAIG WALLACE WOOD,

    Defendant - Appellant.
_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:21-CR-00484-JFH-1)**
_____

Shira Kieval, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant – Appellant.

Steven J. Briden, Assistant United States Attorney (Clinton J. Johnson, United States Attorney and Stacey P. Todd, Assistant United States Attorney, on the brief), Northern District of Oklahoma, Tulsa, Oklahoma, for Plaintiff – Appellee.
_____

Before **PHILLIPS**, **SEYMOUR**, and **MURPHY**, Circuit Judges.
_____

**MURPHY**, Circuit Judge.
_____

## I. INTRODUCTION

A grand jury indicted Craig Wood on charges of assault with a dangerous weapon with intent to do bodily harm in Indian country, 18 U.S.C. §§ 113(a)(3),

1151, 1153, and assault resulting in serious bodily injury in Indian country, *id.*

§§ 113(a)(6), 1151, 1153.[1] To obtain convictions on these charges, the government

was obligated to prove Wood is an Indian. *See United States v. Prentiss*, 273 F.3d

1277, 1279-80 (10th Cir. 2001) ("*Prentiss II*") (so holding with respect to parallel

provision of 18 U.S.C. § 1152); *id.* at 1280 n.2 (noting same definition of "Indian

status" applies to both §§ 1152 and 1153). To do so, the government sought to

introduce at trial a "Certificate of Indian Blood" (the "Indian Blood Certificate"), a

purported tribal document of the Seneca-Cayuga Nation. *See* Fed. R. Evid. 803(6)

(providing an exception to the rule against hearsay for records of regularly conducted

activity if the proponent authenticates the record by establishing the existence of

certain conditions precedent). To authenticate the Indian Blood Certificate, the

government adduced a "Certificate of Authenticity" (the "Authenticity Certificate").

*See* Fed. R. Evid. 902(11) (allowing authentication of domestic records of regularly

conducted activity "by a certification of the custodian or another qualified person").[2]

---

[1] The terms "Indian" and "Indian county" are used in portions of the United States Code applicable in this case. *See* 18 U.S.C. § 1151 (defining "Indian country"); *id.* § 1153 (providing that "[a]ny Indian who commits against the person or property of another . . . [a listed offense] within the Indian country, shall be subject to the same law and penalties as all other persons committing any [listed offense] within the exclusive jurisdiction of the United States"). And, as set out below, this appeal involves the § 1153 requirement that the defendant be an "Indian." "For [these reasons] alone, we use the terms 'Indian' and 'Indian country' in this opinion." *See United States v. Wells*, 38 F.4th 1246, 1251 n.1 (10th Cir. 2022).

[2] This court recognizes the procedure set out in Rule 902(11) is not the sole avenue for rendering Rule 803(6) records self-authenticating. *See*, *e.g.*, Fed. R. Evid. 902(13), (14). Importantly, the Authenticity Certificate only references Rule 902(11), the government did not undertake the steps necessary to render the

Wood objected to use of the Authenticity Certificate to satisfy Rule 803(6)'s conditions. He noted the government did not produce the Authenticity Certificate until after the jury was chosen and its members excused for lunch, leaving him without fair opportunity to examine and verify the document and its contents. *See* Fed. R. Evid. 902(11) (requiring written, reasonable pre-trial notice of intent to use a certificate of authenticity). Without addressing Rule 902(11)'s notice requirement, the district court overruled Wood's objection. Based exclusively on the fact the same individual signed both relevant certificates, it concluded the Authenticity Certificate authenticated the Indian Blood Certificate, allowing admission of the Indian Blood Certificate into evidence. Thereafter, a jury convicted Wood on both charges.

Wood appeals, contending the district court abused its discretion in allowing the government to use the late-produced Authenticity Certificate to authenticate the Indian Blood Certificate. This court agrees. In light of the facts and circumstances presented, the district court decision was manifestly unreasonable. Furthermore, the government has not carried its burden of demonstrating by a preponderance that the district court's evidentiary error was harmless.[3] Accordingly, exercising jurisdiction

---

Indian Blood Certificate or its component parts self-authenticating under any other provision of Rule 902, and the government does not reference any other portion of Rule 902 on appeal. Thus, the question in this appeal is limited to whether the government complied with Rule 902(11) in using the Authenticity Certificate to render the Indian Blood Certificate self-authenticating.

[3] Because Wood is entitled to appellate relief based solely on his claim of error relating to the admission of the Indian Blood Certificate, this court need not address the additional alleged evidentiary errors Wood raises on appeal.

pursuant to 28 U.S.C. § 1291, this court **remands** the matter to the district court to **vacate** Wood's convictions and to conduct any further necessary proceedings.[4]

## II. BACKGROUND

### A. Factual Background

In March 2021, Wood and his girlfriend, M.M., were staying together at the Hampton Inn in Broken Arrow, Oklahoma. In the evening, M.M. and Wood walked from the Hampton Inn to a nearby bar. M.M. left the bar early because she was not feeling well. Later that night, an intoxicated Wood returned to the room. Upon his return, Wood accused M.M. of "nodding" at other men and saying other men's names under her breath. Wood began biting and punching M.M. He grabbed a series of objects and used them to viciously strike M.M. After the assault, to keep her from seeking help, Wood told M.M. to change out of her clothes and get in bed with him.

---

[4] This court's conclusion that the district court abused its discretion in admitting the Indian Blood Certificate, even when coupled with the decision that it is unnecessary to resolve whether other evidence in the record bearing on Wood's Indian status is independently sufficient to prove the status issue beyond a reasonable doubt, *see infra* n.13, does not impact the government's ability to retry Wood. Wood has not asserted on appeal a sufficiency challenge to either of his convictions. Even if he had done so, such claims would fail because the Indian Blood Certificate, standing alone, is sufficient evidence of Wood's Indian status. The Supreme Court has made clear that, in reviewing a conviction for sufficiency, a reviewing court "must consider all of the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (per curiam) (quotation omitted); *see also United States v. Tateo*, 377 U.S. 463, 465 (1964) (holding the Double Jeopardy Clause "does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction").

It was not until Wood fell asleep or passed out that M.M. could summon the courage to leave the hotel room and seek assistance.

After fleeing the hotel room, M.M. sought help from the front desk clerk. Recognizing M.M.'s fear and signs she had suffered a beating, the clerk contacted the police. Officers arrived shortly thereafter and spoke with M.M. An exceedingly fearful M.M. described the abuse she suffered at Wood's hands. An officer went to M.M.'s and Wood's hotel room and located Wood. The state of the room, together with the presence of objects described by M.M., corroborated M.M.'s statements to police about the abuse. Officers arrested Wood and had M.M. transported to the hospital by ambulance. Medical professionals at the hospital diagnosed M.M. with multiple fractures; widespread bruising, cuts, and abrasions; and bite marks on her arms. In the process of obtaining medical care, M.M. disclosed to medical professionals Wood's past and present abusive conduct.

A federal grand jury issued an indictment alleging, in Count One, that Wood, "an Indian, with intent to do bodily harm, assaulted M.M. . . . with a dangerous weapon, by repeatedly beating M.M. with a hairdryer, a hair straightener, and electric cord." *See* 18 U.S.C. §§ 113(a)(3), 1151, 1153. Count Two of the indictment further alleged Wood assaulted M.M., using the same objects, "resulting in serious bodily injuries, including, but not limited to, a closed fracture of nasal bone; acute, nondisplaced fractures of the left lateral seventh, ninth, and tenth ribs, soft tissue edema about the elbow; and bruising on the face, back, legs, and upper extremities." *See id*. at §§ 113(a)(6), 1151, 1153.

5

**B. Legal Background**

"Criminal jurisdiction over offenses committed in 'Indian country,' 18 U.S.C. § 1151, is governed by a complex patchwork of federal, state, and tribal law." *Negonsott v. Samuels*, 507 U.S. 99, 102 (1993) (quotation omitted). Generally, "offenses committed by one Indian against the person or property of another . . . are subject to the jurisdiction of the concerned Indian tribe." *Id.* (quotation omitted). On the other hand, "states may exercise jurisdiction when the defendant and the victim are both non-Indians." *United States v. Prentiss*, 256 F.3d 971, 974 (10th Cir. 2001) (en banc) ("*Prentiss I*") (citing *United States v. McBratney*, 104 U.S. 621, 623-24 (1881) for the proposition that upon admission to the union, states "acquired criminal jurisdiction over non-Indians in Indian country within [their] borders"). Certain "Major Crimes"—those specifically listed in § 1153[5]—are, however, within the exclusive jurisdiction of federal courts even when committed by an Indian in Indian county. *Negonsott*, 507 U.S. at 102-03; *Keeble v. United States*, 412 U.S. 205, 205-06 (1973) (holding that § 1153 "authorizes the prosecution in federal court of an Indian charged with the commission on an Indian reservation of certain specifically

---

[5] The following is the list of major crimes set out in § 1153: "murder, manslaughter, kidnapping, maiming, a felony under chapter 109A [crimes relating to 'sexual abuse' as defined at 18 U.S.C. §§ 2241 to 2248], incest, a felony assault under section 113, an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title [stealing of property worth in excess of $1000]."

enumerated offenses").[6] Thus, "identifying the statuses of the defendant and the victim is often essential in determining what court may hear the case." *Prentiss I*, 256 F.3d at 974. And, as particularly relevant to the issue Wood raises on appeal, to obtain convictions on the charges against Wood, the government is obligated to prove Wood is an Indian. 28 U.S.C. § 1153; *see Prentiss II*, 273 F.3d at 1279-80; *id.* at 1280 n.2; *see also United States v. Zepeda*, 792 F.3d 1103, 1113 (9th Cir. 2015) (en banc); *United States v. Stymiest*, 581 F.3d 759, 763 (8th Cir. 2009). In the absence of a definition in the relevant statutes, this court applies "a two-part test for determining whether a person is an Indian for the purpose of establishing federal jurisdiction over crimes in Indian country." *Prentiss II*, 273 F.3d at 1280. To satisfy that test, the government must prove Wood "(1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government." *Id.* (quotation omitted).

One way of proving a defendant's Indian status under the *Prentiss II* test, and the method at issue in this appeal, is to adduce a tribal document containing such information. *United States v. Diaz*, 679 F.3d 1183, 1187 (10th Cir. 2012) ("Evidence a person has an Indian tribal certificate that includes the degree of Indian blood, or membership in a tribe that will not accept members without a certain degree of consanguinity . . . has been held to satisfy the *Prentiss* test."). Such documents

---

[6] Another class of offenses—"'interracial crimes,' those in which the defendant is an Indian and the victim is a non-Indian, or vice versa"—are governed by the jurisdictional provisions of § 1152. *See Prentiss II*, 273 F.3d at 1278.

7

without authentication are not, however, admissible. *See* Fed. R. Evid. 902(1), (2) (setting out classes of "Domestic Public Document" that are self-authenticating by signing and sealing or signing and certification, which classes do not include tribal documents); *United States v. Walker*, 85 F.4th 973, 982 (10th Cir. 2023) (so holding); *United States v. Alvirez*, 831 F.3d 1115, 1122-23 (9th Cir. 2016) (same). Instead, to authenticate such a document, a proponent proceeding under Rule 803(6) must demonstrate a tribal record of an "act, event[, or] condition" (1) "was made at or near the time by—or from information transmitted by—someone with knowledge"; (2) "was kept in the course [of the tribe's] regularly conducted activity"; and (3) "the making of the record was a regular practice of that activity." Fed. R. Evid. 803(6)(A)-(C). The proponent can make this showing through "the testimony of the custodian or another qualified witness, or by a certificate that complies with Rule 902(11)." Fed. R. Evid. 803(6)(D).[7] To authenticate a tribal document under the Rule 902(11) certificate route, a proponent must give an opposing party reasonable pre-trial written notice sufficient to allow the opposing party "a fair opportunity to challenge" both

---

[7] Historically, authentication of a record of a regularly conducted activity required testimony from a live foundation witness. 2 McCormick On Evid. § 229.1 (8th ed., updated July 2022). In 2000, however, the Federal Rules of Evidence were amended to allow authentication to take place "under certain circumstances without the expense and inconvenience of producing time-consuming foundation witnesses." Fed. R. Evid. 803 advisory committee's note to 2000 amendment. Paragraph (11) was added to Rule 902, creating a process for using a written certificate, disclosed pretrial, to demonstrate a document complies with Rule 803(6)(A)-(C) and is, therefore, admissible as a domestic record of a regularly conducted activity. Fed. R. Evid. 902 advisory committee's note to 2000 amendment.

the tribal record and certificate of authenticity. Fed. R. Evid. 902(11); *see also* Fed. R. Evid. 902 advisory committee's note to 2000 amendment (providing that this written notice requirement, which notice must be provided a reasonable time prior to trial, exists "to give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the declaration").

## C. Procedural History

The government disclosed the Indian Blood Certificate, a document of the Seneca-Cayuga Nation, during discovery:



Although the government disclosed this document pretrial, it did not disclose how it intended to establish the Indian Blood Certificate's admissibility. In its December 10, 2021, trial brief, which was filed ten days before the trial's scheduled start date, the government stated it had contacted Wood regarding the possibility he might stipulate to his Indian status. Wood declined the government's request to so stipulate on

December 15.[8] Nevertheless, the government failed to include any witness to authenticate the Indian Blood Certificate on the "final" pretrial witness list it filed on December 17.

On the morning of trial, albeit untimely, the government announced it would use a live, unnamed, witness to authenticate the Indian Blood Certificate. Although Wood objected to the belated addition of a new witness, the district court overruled the objection and voir dire commenced. Thereafter, the district court recessed the proceedings to allow the government "to get the name" of the authentication witness so the district court could inquire whether any venire members knew that person. After the recess, the government disclosed three potential names for the witness and voir dire continued.

After the jury was selected and its members excused for lunch, the government stated it just received the Authenticity Certificate and was "now tendering a copy to defense counsel." The Authenticity Certificate is set out below:

---

[8] Wood's declination of the request to stipulate to his Indian status was discussed at a hearing on December 17. The government noted that absent Wood's stipulation it would be necessary to call additional foundational witnesses, prolonging the trial. The district court stated the issue of stipulations was "something that I can't and don't need to be involved in," and noted it would accommodate as many foundational witnesses as the government needed to call. The government committed to filing a revised witness list by 5:00 p.m. that day, which it failed to do.

11

**CERTIFICATE OF AUTHENTICITY**
**Pursuant to 28 U.S.C. § 1746**
**This is a certification of authenticity of domestic business**
**records pursuant to Federal Rules of Evidence 902(11).**

I, _Leslie McCoy_, attest under the penalties of perjury (or criminal punishment for false statement or false attestation) that:

1) I am a United States citizen and I am over eighteen years of age.

2) I am employed by _Seneca-Cayuga Nation_

3) My official title is _Enrollment Officer_.

4) I am a custodian of records for _Seneca-Cayuga Nation_.

5) Each of the records attached hereto is the original record or a true and accurate duplicate of the original record in the custody of _Seneca-Cayuga Nation_, and I am a custodian of the attached records.

6) The records attached to this certificate were made at or near the time of the occurrence of the matters set forth.

7) The records attached were made by (or from information transmitted by) a person with knowledge of those matters.

8) Such records were kept in the course of a regularly conducted business activity of _Seneca-Cayuga Nation_.

9) Such records were made by _Seneca-Cayuga Nation_ as a regular business practice.

The records are (include names, account numbers and/or phone numbers):

_____
_____
_____

I declare, certify, verify, and state under penalty of perjury that the foregoing is true and correct. I further state that this certification is intended to satisfy Rules 803(6) and 902(11), Federal Rules of Evidence.

_12-2021_
Date

_Signature_

The government averred as follows:

> In the eyes of the government this is a self-authenticating document attached to the Certificate of Authenticity, a certificate of Indian blood.
>
> Based on this new document, Judge, we believe that the defendant's Indian status would be satisfied by the self-authenticating document and no witness would be needed for trial, for in-person testimony . . . .

The district court gave Wood until the end of lunch to "look over" the Authenticity

Certificate and "prepare[] to respond."

12

After lunch, Wood formally objected to the use of the Authenticity Certificate to authenticate the Indian Blood Certificate. Wood noted he was not given the reasonable written notice required by Rule 902(11). Instead, Wood noted, he was "handed" the Authenticity Certificate only after the jury was empaneled, leaving him without "a fair opportunity . . . to really look at it and . . . be able to challenge it." Nor, Wood argued, was it clear the person who signed the Authenticity Certificate "ha[d] actually seen what [the signer was] authenticating." In that regard, Wood noted the Indian Blood Certificate was dated July 23, 2021, while the Authenticity Certificate, which was handed to defense counsel as a standalone document during trial, was simply dated "12-20-21." Given that the government was scrambling to come up with an authentication witness on the first day of trial, Wood asserted this date discrepancy created real questions about the validity of the Authenticity Certificate.

Independent of the government's failure to follow the notice dictates of Rule 902(11), Wood claimed the newly disclosed Authenticity Certificate failed to address discrepancies in the Indian Blood Certificate. For example, Wood contended the unexplained presence of a "handwritten enrollment date" on the otherwise typewritten Indian Blood Certificate raised the following question: was the enrollment date part of an authentic record or was it, instead, added later to help the government prove that Wood was enrolled at the time the offense was committed?[9]

---

[9] *See* Fed. R. Civ. P. 803(a)(6)(E) (providing that the exception set out therein does not apply if the opponent shows "the source of information or the method or

13

Additionally, the Indian Blood Certificate was dated July 23, 2021, some four months after the crimes charged, raising questions about Rule 803(6)(A)'s close-in-time requirement.[10]

The district court overruled Wood's objection. It ruled the Authenticity Certificate authenticated the previously disclosed Indian Blood Certificate and preadmitted the Indian Blood Certificate. It did not mention Rule 902(11)'s notice requirement or address most of the concerns set out in Wood's objection. Instead, it simply stated as follows:

> The [Authenticity Certificate] reflects by declaration that Leslie McCoy is familiar with the document that it's attached. She's also not only signed the [Authenticity Certificate], but she signed the [Indian Blood

circumstances of preparation indicate a lack of trustworthiness"); Fed. R. Evid. 803 advisory committee's note to 2014 amendment ("The opponent, in meeting its burden, is not necessarily required to introduce affirmative evidence of untrustworthiness. For example, the opponent might argue that the record was prepared in anticipation of litigation and is favorable to the preparing party without needing to introduce evidence on the point. A determination of untrustworthiness necessarily depends on the circumstances.").

[10] *See* Fed. R. Evid. 803(6)(A) (excepting from the rule against hearsay a record of "an act, event, condition, opinion, or diagnosis" if, inter alia, "the record was made at or near the time" of the act, event, condition, opinion, or diagnosis). On appeal, Wood does not affirmatively allege the Indian Blood Certificate fails to comply with the requirements of Rule 803(6)(A). He simply notes there was reason to doubt its compliance and the district court's admission of the late-filed Authenticity Certificate prevented him from exploring the issue, let alone making a record as to compliance questions. For this reason, it is unnecessary to explore the exact nature of the Indian Blood Certificate—whether, for example, it and/or its component parts are actually copies of tangible records produced by the Seneca-Cayuga Nation at, or near, the time of Wood's enrollment or, instead, some other kind of document created at the request of the government from digital and/or non-digital tribal records. *See supra* n.2. It is likewise unnecessary to explore whether other authentication avenues set out in Rule 911 are more proper avenues for admitting a document such as the Indian Blood Certificate. *Id.*

14

> Certificate], so the court is satisfied that she has seen the document to which she was declaring that she had seen and was part of the record. She indicates that she is the custodian of records, she is the enrollment officer, and she's employed by the Seneca-Cayuga Nation. I think it satisfies Rule 803 and Rule 902, and the court will find it's admissible.

Early on the second day of trial, the government published the Indian Blood Certificate to the jury, asked a prosecution witness about its contents, and referenced the document during closing arguments. The jury convicted Wood on both counts set out in the indictment.

### III. ANALYSIS

### A. Error

Wood objected to the use of the Authenticity Certificate to authenticate the Indian Blood Certificate, preserving the issue for appellate review. This court "review[s] legal interpretations of the Federal Rules of Evidence de novo"; evidentiary decisions are reviewed for abuse of discretion. *United States v. Silva*, 889 F.3d 704, 709 (10th Cir. 2018). As particularly relevant here, this court will disturb a trial court's decision regarding the appropriateness of using a 902(11) certificate to authenticate Rule 803(6) records only if that decision amounts to an abuse of discretion. *See Stenson v. Edmonds*, 86 F.4th 870, 879-80 (10th Cir. 2023). "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Silva*, 889 F.3d at 709 (quotation omitted).

15

Considering all the facts and circumstances in this case, we conclude the district court's decision to allow the government to use the belated[11] Authenticity Certificate to authenticate the Indian Blood Certificate was manifestly unreasonable. In so concluding we note the district court essentially ignored Rule 902(11)'s notice requirement, rendering a nullity one of the critical elements of the rule. As noted above, *supra* Section II.B., the kinds of records subject to Rule 803(6) were, prior to 2000, generally admissible only upon the testimony of a live foundation witness. To save the time and expense of producing such witnesses, the rules committee innovated by creating the certificate system set out in Rule 902(11). To ensure this resource-saving endeavor did not serve to unfairly disadvantage litigation opponents, however, the rules committee required the introducing party provide timely, written pretrial notice and access to such certificates. Thus, opponents could do at pre-trial what they would have previously done by cross-examining foundation witnesses during trial. By essentially treating Rule 902(11)'s notice requirement as a nullity, and by doing so in a case where Wood raised nonfrivolous questions as to whether the Indian Blood Certificate was a valid Rule 803(6) document, the district court erred as a matter of law.[12]

---

[11] The parties argue at length as to whether the timing of the government's disclosure of the Authenticity Certificate—after the jury was seated but before it was sworn—amounts to pretrial notice. This court need not resolve this difficult question. The government's actions here, whether technically pretrial or not, do not amount to written notice provided a reasonable time before trial as required by Rule 902(11).

[12] In his appellate briefing, Wood asks this court to treat Rule 902(11)'s notice requirement as hard-and-fast, requiring exclusion of any Rule 803 records supported

In response, the government offers unconvincing arguments. Notably, it does not ground any argument in the text, purpose, or history of the Rule. It argues Wood could not have been surprised it pursued authentication by certificate, since that was one of two available avenues for authentication of the tribal records. This argument belies the government's own declaration, as late as the morning trial proceedings began, that it would use a live witness to authenticate the Indian Blood Certificate. It is also inconsistent with discussions the parties engaged in with the district court at the pre-trial hearing. *See supra* n.8. In any event, the assumption, absent timely notice to the contrary, is that Rule 803(6) records will be admitted by the testimony of a live foundation witness. *See supra* Section II.B. It is upon the filing of a timely

---

solely by an untimely Rule 902(11) certificate. We decline to read Rule 902(11) as creating such a rule. There may be circumstances in which exclusion based on a notice violation would not be appropriate. For instance, a notice violation may be so entirely technical and non-prejudicial that a trial judge could reasonably allow the untimely certificate to authenticate Rule 803(6) documents. *See United States v. Komasa*, 767 F.3d 151, 155-56 (2d Cir. 2014). Alternatively, the government and district court may take all the necessary steps, in the face of a timeliness objection, to make sure an opponent is not prejudiced by a late-filed Rule 902(11) notice. *See United States v. Daniels*, 723 F.3d 562, 579-81 (5th Cir. 2013). Thus, while this court is comfortable concluding a district court abuses its discretion when it fails to even consider the implications of an untimely Rule 902(11) certificate, we see no indication in the Rule's text, its history, or in relevant precedent for concluding district courts have no discretion to tailor appropriate remedies when faced with such untimely certificates. It is worth noting, however, "that parties fail to comply with . . . Rule 902(11)'s written notice requirements at their own risk." *Komasa*, 767 F.3d at 156; *see also Stenson*, 86 F.4th at 880 ("By providing the [902(11)] certification just prior to trial, Plaintiff deprived Defendants of their opportunity to meaningfully inspect and challenge it. And, where the proponent of evidence does not provide an opportunity to inspect the certification, the district court may exclude the records." (footnote omitted)).

17

Rule 902(11) certificate that an opponent becomes aware it must examine pretrial whether a proper foundation exists to treat records as admissible under Rule 803. The government does not identify anything in the record indicating Wood's counsel was unprepared to explore the admissibility of the Indian Blood Certificate through cross-examination at trial, consistent with the government's declaration the morning trial proceedings began that it would rely on a live foundation witness. As Wood correctly notes in his appellate briefing, a live foundation witness from the Seneca-Cayuga Nation could have provided significantly more information than that set out in the Authenticity Certificate. A live witness might have explained the exact nature of the tribal record, digital or analog; when and how it was created given the three different dates on its face; and why crucial information was handwritten onto an otherwise-typewritten document. Unfortunately, Wood could not explore these questions once the government, with the district court's imprimatur, reversed its decision to rely on a live witness in favor of the late-filed Authenticity Certificate.

Nor is the government correct in asserting the district court acted reasonably in allowing the untimely Authenticity Certificate to authenticate the Indian Blood Certificate because Wood failed to request a continuance to (1) question the signator McCoy outside of court or (2) call McCoy as a witness. "The notice requirements of Rule 902(11) are in place precisely to ensure that evidence to be accompanied by an affidavit can be vetted for objection or impeachment in advance." *United States v. Brown*, 553 F.3d 768, 793 (5th Cir. 2008). The government offers no support for the notion the burden fell on Wood to remedy any prejudice flowing to him from the

18

government's own failure to follow the pre-trial notice dictates of Rule 902(11).

Indeed, the extant case law suggests just the opposite. *Daniels*, 723 F.3d at 580

("[T]he district court suggested two possible solutions to the lack of timely written

notice . . . : first, [it] stated that it could grant *instanter* subpoenas to have the record

custodians come and testify and could attach an order to the subpoenas if necessary;

second, [it] stated that it could grant a full day's continuance to allow defense

counsel to evaluate the attestations and obtain witnesses."); *id.* ("After further

discussion, the Government proposed that it would restructure its case so as not to

use the attestations until three days after the defense raised its objection . . . .").[13]

---

[13] The dissent strains to justify the government's procedural failures in this case. In the process, it adopts the government's efforts to shift the burden to Wood to cure his own prejudice. The government unapologetically failed to notify Wood before trial that it would utilize Rule 902(11) to lay a foundation for the Indian Blood Certificate. To the contrary, it stated in open court—at a Friday hearing two days before the trial was to start on a Monday morning—that it would use a live foundation witness and would disclose that witness before the end of the day. It failed to do so. During voir dire, it provided the district court with names of three potential foundation witness. Then, a mere one hour before opening statements it changed tack and submitted the Authenticity Certificate in an attempt to lay the foundation for the Indian Blood Certificate. Consequently, Wood was never allowed a meaningful opportunity to address the multiple discrepancies in the Indian Blood Certificate or to create a fully developed record. Rather than address these government derelictions, the dissent suggests Wood is at fault for not correcting the government failures. The approach embraced by the dissent stands on its head the government's burden to prove Wood's Indian status by complying with the provisions of Rules 803(6) and 901(11). By upending the fair and balanced process set out in Rule 901(11), the dissent rewrites the rule in a way that is intended to obligate every non-proponent to assume in every case that Rule 803(6) materials will be admitted via Rule 902(11). Rule 902(11), however, is predicated on the historically accepted notion that, absent special notice on the part of the proponent, the non-proponent will be entitled to cross-examine at trial a live witness whose testimony is intended to establish foundation for 803(6) materials. By accepting the

19

There is simply no doubt the government provided Wood with untimely notice of the Authenticity Certificate by presenting that certificate after the jury was already seated. Upon Wood's objection, the government did not state cause, let alone good cause, for its failure to comply with the dictates of Rule 902(11). Nor did the government offer any possible methods of remedying prejudice to Wood flowing from the late notice. Wood's objection raised nonfrivolous issues as to whether the Indian Blood Certificate complied with Rule 803(6)(A)-(C). In denying Wood's objection, the district court failed to consider the issue of timeliness. Under these circumstances, the district court's decision to disregard the issue of timeliness was manifestly unreasonable. Because the district court erred in allowing the government to use the untimely Authenticity Certificate to authenticate the Indian Blood Certificate, it was correspondingly error for the district court to admit into evidence the Indian Blood Certificate.

**B. Harmlessness**

"If a party objects to a district court's evidentiary ruling based solely on the Federal Rules of Evidence, we review for [non-constitutional] harmless error." *Walker*, 85 F.4th at 982 (quotation and alterations omitted). "In non-constitutional harmless error cases, the government bears the burden of demonstrating, by a preponderance of the evidence, that the substantial rights of the defendant were not affected." *Id.*

---

government's argument and inverting this carefully tailored scheme, the dissent places untoward power in the hands of federal prosecutors.

(quotation omitted). This standard, derived from the Supreme Court's decision in

*Kotteakos v. United States*, 328 U.S. 750, 765 (1946), asks whether the verdict was

"substantially swayed by the error . . . . The inquiry cannot be merely whether there

was enough to support the result, apart from the phase affected by the error. It is

rather, even so, whether the error itself had substantial influence." If the answer to

that question is yes, or "if one is left in grave doubt," this court must set aside the

conviction. *Id.* The question then is not whether, setting aside the improperly

admitted evidence, the remaining evidence was sufficient to convince a reasonable

jury to convict. *Id.*; *United States v. Lane*, 474 U.S. 438, 449, 450 n.13 (1986).

Rather, the "*Kotteakos* standard requires a reviewing court to examine the entire

record, focusing particularly on the erroneously admitted statements." *United States

v. Tome*, 61 F.3d 1446, 1455 (10th Cir. 1995). Having done so, this court must

determine whether the improperly admitted evidence "substantially influenced the

outcome of the trial, or whether we are left in grave doubt as to whether it had such

an effect." *Id.* (quotations omitted).

Despite this somewhat demanding standard, the entirety of the government's

argument as to harmlessness is the following: "Even if it was error to allow the

[Authenticity Certificate] to lay the foundation for Wood's tribal status record, any

error was harmless because M.M. also testified, based on their long relationship, that

Wood is an Indian." Gov't Response Br. at 49. This argument suffers from the very

defect identified above: collapsing the concepts of evidentiary sufficiency and non-

constitutional harmlessness without any effort to explore the significance of the

21

erroneously omitted Indian Blood Certificate on the jurisdictional requirement of Indian blood quantum and membership in a federally recognized tribe. Accordingly, the government's harmlessness argument fails as a matter of law and operates as a waiver of the required *Kotteakos* analysis.

In any event, even if this court were to disregard the government's wholesale waiver of the required analysis and undertake the required *Kotteakos* inquiry sua sponte, *see United States v. Samaniego*, 187 F.3d 1222, 1224-26 (10th Cir. 1999), we would still conclude the admission of the Indian Blood Certificate was not harmless. The government's assessment of M.M.'s testimony is not quite accurate. As set out above, to prove Wood's status as an Indian, the government had to present evidence demonstrating Wood "(1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government." *Prentiss II*, 273 F.3d at 1280 (quotation omitted); *see generally*, *supra*, Section II.B. (describing the definition of the term "Indian" as used in the Major Crimes Act). The government overreaches in asserting M.M. "based" her testimony as to Wood's status on their "long relationship." At the beginning of its direct examination of M.M., the government asked her how she knew Wood. M.M. said he was her "boyfriend." Next, the government asked M.M. how long Wood had been her boyfriend. She responded, "Almost five years." The government then asked M.M. to identify Wood. After she did so, the government engaged in the following colloquy with M.M.:

Q. M.M., do you know if Mr. Wood is Native American?

A. Yes

22

Q. Do you know what tribe?

A. Quapaw and Seneca.

Q. Is that Seneca-Cayuga?

A. Yes.

Thus, in contrast to the government's assertion, the government did not ask and M.M. did not provide any basis, specifically including her long association with Wood, for M.M.'s knowledge Wood was a "Native American" of the Seneca-Cayuga "tribe." Although the government could have asked the jury during closing arguments to draw such an inference, it completely failed to do so. Indeed, the government's extremely limited examination gave the jury precious little basis to evaluate the bases of M.M.'s knowledge. It did not for instance, ask M.M. whether Wood (1) was an enrolled member of the Seneca-Cayuga Nation; (2) had received benefits from the federal government or from the tribe that are only available to members of federally recognized tribes; or (3) was socially accepted as someone affiliated with a recognized tribe through residence on a reservation and participation in the social life of a federally recognized tribe. R. Vol. 1 at 143 (jury instruction defining term Indian); *cf.*, *e.g.*, *Zepeda*, 792 F.3d at 1114. Thus, although Wood did not object to the foundation for M.M.'s exceedingly limited testimony, the absence of such information surely diminishes the weight of that limited testimony.

Additional qualitative differences in the weightiness of the Indian Blood Certificate and M.M.'s testimony as to the relevant *Prentiss II* inquiries leave this

court in grave doubt as to whether the improperly admitted Indian Blood Certificate substantially influenced the jury's verdict.[14] The Indian Blood Certificate was the only direct evidence of Wood's alleged blood quantum and official recognition by the Seneca-Cayuga Nation. While M.M. responded "yes" to the question whether Wood was "Native American," a term otherwise undefined in the trial record, the Indian Blood Certificate specifically states Wood is 1/32 "ethnic" Seneca-Cayuga by blood. *See Prentiss II*, 273 F.3d at 1280-81 (holding that, pursuant to binding Supreme Court authority, "the fact that the defendant had been recognized as an Indian by a tribe was not sufficient to prove his Indian status; some evidence of Indian blood was also necessary"). Furthermore, although M.M. identified Wood as Quapaw and Seneca-Cayuga, she did not testify Wood was actually a recognized member of those tribes. The controlling question under *Prentiss II* is whether Wood is recognized as an Indian by a tribe or the federal government, not whether his girlfriend says he is "Native American."

Ultimately, having reviewed the entire record with a focus on the improperly admitted Indian Blood Certificate, this court is left in grave doubt as to whether the jury would have found Wood to be an Indian, in accord with the relevant jury instruction and the test set out in *Prentiss II*, absent admission of the Indian Blood

---

[14] In undertaking this *Kotteakos* harmlessness analysis, this court need not, and does not, resolve whether M.M.'s meager testimony, in response to just two questions, standing alone, would have been sufficient to prove Wood had some quantum of Indian blood and was an enrolled member of the Seneca-Cayuga Nation.

24

Certificate. [15] The Indian Blood Certificate definitively resolved the question of Wood's Indian status. It set out Wood's specific blood quantum and stated Wood was an enrolled member of the Seneca-Cayuga Nation. *See* R. Vol. I at 143. M.M.'s testimony, assuming it was sufficient, required the jury to make meaningful inferences—that being "Native American" means Wood has "some Indian blood" and that being of the Quapaw and Seneca and Seneca-Cayuga tribe means Wood is an enrolled member of the Seneca-Cayuga Nation.

In concluding the admission of the Indian Blood Certificate was not harmless, this court notes specifically the Ninth Circuit's decision in *United States v. Alvirez*, 831 F.3d 1115, 1120-24 (9th Cir. 2016). Like the instant case, *Alvirez* involves an assault-resulting-in-serious-bodily injury prosecution under 18 U.S.C. §§ 113(a)(6), 1153. *Alvirez* concluded an error in admitting an improperly authenticated tribal Indian-status record was not harmless. *Id*. at 1124. It reached this conclusion even though a government agent testified the defendant lived "on the Hualapai reservation" and the victim testified the defendant was "a member of the Hualapai reservation." *Id*. at 1122. According to *Alvirez*, the limited nature of the agent's

---

[15] The relevant jury instruction, consistent with this court's holding in *Prentiss II*, provided that to "determine [Wood] is Indian," the jury "must find" Wood has "some Indian blood" and "was, at the time of the offense, recognized as an Indian by a federally recognized tribe or by the federal government." R. Vol. I at 143. The instruction further set out a list of considerations the jury could consider in determining whether the government had satisfied the second part of the *Prentiss II* test. *See supra* at 21. The instruction provided that the first consideration on that list, enrollment in a federally recognized tribe, is dispositive if satisfied and, importantly, that the "Seneca-Cayuga Nation is a federally recognized tribe." R. Vol. I at 143.

testimony made it "questionable whether the government would have established [his] Indian status to the satisfaction of the jury" without the tribal record. *Id.* at 1124. Thus, faced with the same kind of qualitative differences in the weightiness of the improperly and properly admitted evidence as to a defendant's Indian status, the Ninth Circuit concluded "it was more likely than not that the [improper] admission of the Certificate materially affected the verdict. *Id.* Similarly, the error here was not harmless even though M.M. testified Wood was Seneca-Cayuga.

## IV. CONCLUSION

For those reasons set out above, the judgment of the United States District Court for the Northern District of Oklahoma is hereby **REVERSED**. The matter is **REMANDED** to the district court to **VACATE** Wood's convictions and to conduct any further necessary proceedings.

23-5027, *United States v. Wood*
**PHILLIPS**, J. dissenting.

I would affirm Wood's conviction and hold that the district court did not abuse its discretion in admitting the Indian Blood Certificate as a self-authenticated business record.[1]

Several weeks before trial, in its initial discovery, the government provided Wood a copy of the Indian Blood Certificate. The majority fails to consider and account for Wood's having a full and "fair opportunity to challenge" the Indian Blood Certificate. *See* Fed. R. Evid. 902(11). Indeed, Wood *did* challenge the Indian Blood Certificate on hearsay grounds in the district court.

The morning of trial, the government made available for Wood's inspection a second document, the Certificate of Authenticity. Wood challenges the timeliness of this disclosure. Wood did not (and does not) challenge the Certificate of Authenticity apart from his challenges to the written contents of the Indian Blood Certificate. So even if the government had also produced the Certificate of Authenticity several weeks before trial, Wood would have been in the same position. In my view, the majority errs by lumping the two separate certificates into a solitary notice category and not analyzing them separately. That makes a difference.

---

[1] I see no plain error on Wood's other issues raised on appeal and do not address them individually, because the majority reverses on the Rule 902(11) issue instead.

We should affirm under the deferential standard governing evidentiary rulings, which becomes even more deferential for hearsay rulings. *See United States v. Merritt*, 961 F.3d 1105, 1111 (10th Cir. 2020) ("A district court has broad discretion to determine the admissibility of evidence, and we review the district court's ruling for abuse of discretion.") (internal citations omitted); *United States v. Rosario Fuentez*, 231 F.3d 700, 708 (10th Cir. 2000) (noting that on hearsay rulings, the district court is granted even "greater deference"). For reference purposes, I begin by quoting the two evidentiary rules at issue in making this case.

## I.    Federal Rules of Evidence 803(6) and 902(11)

Working together, Rules 803(6) and 902(11) set the conditions for self-authentication of business records. For ease of reference, I quote the pertinent portions of the two rules below.

> **Rule 803. Exceptions to the Rule Against Hearsay—Regardless of Whether the Declarant Is Available as a Witness**
>
> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . . .
>
> **(6)    Records of a Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if:
>
>> **(A)**    the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>> **(B)**    the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>> **(C)**    making the record was a regular practice of that activity;

2

    **(D)**   all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

    **(E)**   the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

**Rule 902. Evidence That Is Self-Authenticating**

The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

. . . .

**(11) Certified Domestic Records of a Regularly Conducted Activity.** The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them.

I begin with Rule 902(11). The Certificate of Authenticity checks all the boxes of Rule 902(11)'s first sentence: The Indian Blood Certificate is a copy of a domestic record; Leslie McCoy identified herself as the records custodian and enrollment officer for the Seneca-Cayuga Nation; Ms. McCoy certified that the Indian Blood Certificate met the requirements of Rule 803(6)(A)–(C), tracking the language from those subsections; and in accordance with the governing statute, 18 U.S.C. § 1746, Ms. McCoy certified, verified, and stated under the penalty of perjury that the contents of the Certificate of Authenticity were true.

3

## II.    The Majority's Disposition

The majority opinion reverses Wood's conviction based on Rule 902(11)'s second sentence. It correctly recites that the government, as the proponent of the Indian Blood Certificate, "must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them." Fed. R. Evid. 902(11); *see* Maj. Op. at 8. Then it rules that the government untimely made the Certificate of Authenticity available for Wood's inspection by its delaying doing so until after jury selection. *Id.* at 11. But the majority stops there, too soon. It fails to analyze whether the government's alleged untimeliness in making the certification available for inspection deprived Wood of a "fair opportunity to challenge" either the Certificate of Authenticity or the Indian Blood Certificate. *See* Fed. R. Evid. 902(11).

## III.    The Dissent's Disposition

Did the alleged untimeliness of the Certificate of Authenticity deprive Woods of the fair opportunity to challenge the Indian Blood Certificate? No. Wood's Rule 803(6)(E) challenges to the Indian Blood Certificate came from its written contents, not from anything in the Certificate of Authenticity, and, indeed, the Certificate of Authenticity contained nothing by which to challenge the Indian Blood Certificate. And we must remember that Wood had the Indian Blood Certificate for weeks before the start of the trial. So in attacking the Indian Blood Certificate, it would not have mattered if the government had

4

produced the Certificate of Authenticity weeks earlier, as it had the Indian Blood Certificate. The Indian Blood Certificate supplied all of Wood's cannon fodder for his Rule 803(6)(E) challenge.

I acknowledge that sometimes it will matter if a business-records proponent is untimely in making available for inspection the certificate of authenticity. For instance, an opponent might challenge admission of the underlying business record based on the legitimacy or availability of the custodian of records or on the validity of the custodian's signature. But Wood makes no such challenges. Nothing forestalled Wood from having a fair opportunity to challenge the certificate this way, for instance by calling a Nation representative on the telephone to verify information, hiring a handwriting expert, or subpoenaing witnesses. Nor does he claim so.

The majority opinion faults the district court for "essentially ignor[ing]" the Rule 902(11) notice requirements, especially, it says, because Wood has stated "nonfrivolous issues" about whether the Indian Blood Certificate satisfies the requirements of Rule 803(6)(A)–(C). Maj. Op. at 16, 20. Though I question whether Wood's actual objection went beyond Rule 803(E), which requires him to show that "the sources of information or the method or circumstances of preparation indicate a lack of trustworthiness," I'll assume for argument's sake that the majority is correct about the scope of his objection. Even then, I see no merit to any of Wood's actual objections, let alone anything egregious enough to qualify as an abuse of discretion on a hearsay ruling.

5

In assessing Wood's arguments, we should try to put ourselves in the district court's shoes. In deciding whether the Certificate of Authenticity self-authenticated the Indian Blood Certificate, the district court gave defense counsel a full opportunity to state objections. To be precise about those objections, we must plow through a lengthy block quote:

> THE COURT: Do you have an objection to the document?
>
> [DEFENSE COUNSEL]: Yes, Your Honor, I do have an objection to the Certificate of Authenticity. Mainly, in 803 – Federal Rule of Evidence 803(6)(E), it states that all five of those factors (A), (B), (C), (D), and (E) must be included, and (E) is "the opponent does not show the source of information or the method or circumstances of preparation to indicate a lack of trustworthiness."
>
> The document here is not notarized in any way. It was signed today, but the document that's trying to get entered into evidence is from July of this year, July 23 of this year. I think that's one of the issues about being in time and close to when it's being authenticated.
>
> Also, on the main document itself, there's just a handwritten note for the enrollment date. And that raises an eyebrow for me as far as authenticity, because for the tribal status he needs to be enrolled at the time the offense was committed, and just having a handwritten enrollment date, I don't think that is authentic. I don't think that's what the Certificate of Authenticity would show.
>
> Also, I don't know that he's actually seen this document in the last seven months, the person – or five months, the person that's signed this. Not that he couldn't go back and look at the record on his own computer, but this particular document, I don't know. I really question that.
>
> And then next, it says it's authentic under 902(11), Federal Rule of Evidence 902(11). Your Honor, part of that, the second half of that one says that, Before trial, the proponent must give an adverse party reasonable notice to offer the record, and must make the record and certification available for inspection.

6

This was handed to me after the jury was impaneled, which I would believe that would mean the trial had already started and there wouldn't be a fair opportunity for me to really look at it and raise any – be able to challenge it. Thank you.

THE COURT: All right. [AUSA], do you wish to respond, sir?

[AUSA]: Thank you, Your Honor. Your Honor, we're asking this court to move – to enter Exhibit 35 under a self – as this is a self-authenticating document.

Your Honor, just to lay some procedural posture for the court. The Certificate of Indian Blood was filed as part of the government's original discovery packet to defense counsel, so he's been aware of that since the inception of this case.

In regards to the other dates that matter, we were made aware on Saturday that the defense was going to object –

THE COURT: You can go to the podium if you want, [AUSA], that might be easier.

[AUSA]: We were made aware over the weekend that the defense was not going to be stipulating to the defendant's Indian status despite our requested emails on, I believe it was December 13 and December 14 or 15th thereafter. So, Your Honor, we believe that this should be entered in as an exhibit as a self-authenticating document, specifically the Certificate of Indian Blood would be the exhibit itself.

The exhibit within the binder in the packet is redacted to exclude the addresses, but the document itself is the same. The Certificate of Authenticity is signed by Leslie McCoy. The Certificate of Indian Blood is signed by Leslie McCoy, and the remaining fall under 902(11), Your Honor.

If the court has any further inquiry, I'll be happy to answer.

THE COURT: [Defense Counsel], the Certificate of Indian Blood document indicates it was signed by Leslie McCoy. On the front page of the Certificate of Authenticity, looks like it was signed by Leslie McCoy today. Do you see that declaration?

[DEFENSE COUNSEL]: Yes, I do, Your Honor.

7

THE COURT: So what was your concern about whether the person had seen the document or not?

[DEFENSE COUNSEL]: I was concerned whether the person, Leslie McCoy, had seen this particular document today when they signed that letter of authenticity, because the document, the date on it says – of the Certificate of Indian Blood – says Friday July 23, 2021. Now, as we know from a few hours ago, there was not a witness lined up. And so there was a rush to get a witness here. There – so being in that rush, I don't know if McCoy has actually seen what he's authenticating.

I did receive a couple emails from the government beginning I believe was December 8 on whether or not we were going to stipulate to the tribal status and the blood quantum. And at one point – I don't remember the date of that email, but it was a few days later, I said I don't believe that we are. And I think there's been plenty of time to get this into evidence, to get the correct Certificate of Authenticity or have a witness here.

THE COURT: All right. Well, the document – the Certificate of Authenticity reflects by declaration that Leslie McCoy is familiar with the document that it's attached. She's also not only signed the Certificate of Authenticity, but she signed the Certificate of Indian Blood, so the court is satisfied that she has seen the document to which she was declaring that she had seen and was part of the record. She indicates that she is the custodian of records, she is the enrollment officer, and she's employed by the Seneca-Cayuga Nation. I think that satisfies Rule 803 and Rule 902, and the court will find that it's admissible.

Anything else?

[DEFENSE COUNSEL]: No, Your Honor.

App. vol. II, at 15–19.

I address Wood's arguments in the order he presented them to the district court—first, the Rule 803(6) arguments; second, the Rule 902(11) notice arguments.

8

### A.     Wood's Hearsay Arguments

Examining the district court's rulings on Wood's hearsay-related arguments, I see no error or abuse of discretion.

As seen, Wood's counsel began his objection by relying on Rule 803(E), which he acknowledged puts a burden on him to "show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." In doing so, he pointed to what he saw as irregularities causing him to be suspicious about the trustworthiness of the Indian Blood Certificate.

First, Wood argued that the Certificate of Authenticity "was signed today, but the document that's trying to get entered into evidence is from July of this year, July 23 of this year. I think that's one of the issues about being in time and close to when it's being authenticated." App. vol. II, at 15–16. This is confused. The sole close-in-time requirement in Rule 803(6) is in subsection (A), which requires that "the record was made at or near the time by—or from information transmitted by—someone with knowledge." That's a long way from Wood's objection. But even if we thought it reasonable to require the district court to extrapolate and refashion Wood's objection into one under subsection (A), Wood would at best be arguing that the July 23, 2021 date on the face of the Indian Blood Certificate is the date the record first came into existence and not simply the date it was generated from a database as part of the unfolding prosecution. The district court would not abuse its discretion in rejecting that

9

argument. I am unsure if this is one of Wood's arguments that the majority deems "nonfrivolous." *See* Maj. Op. at 16.

Second, Wood argued that the Indian Blood Certificate contained "just a handwritten note for the enrollment date." App. vol. II, at 16. Indeed, the Certificate of Indian Blood form lacks a space for the computer entry of that information. *See* Supp. App. vol. I, at 53. In making this objection, Wood makes a bare-naked claim that the government conspired with Ms. McCoy to write "Enrollment Date: 4-29-1995" to make Wood eligible for federal prosecution as an Indian. *Id.* Again, the district court would not abuse its discretion by discrediting this theory, especially because the form has significant indicia of trustworthiness, including the insignia and contact information for the Seneca-Cayuga Nation, the date of Wood's birth, his own enrollment number, his mother's name, and his address. *Id.* Again, I am unsure if this is one of Wood's arguments that the majority deems "nonfrivolous." *See* Maj. Op. at 16.

Third, Wood's counsel argued that he wasn't sure whether the person signing the Certificate of Authenticity had seen the Indian Blood Certificate in the last five months (presumably the time between its being copied from a database in July and the start of trial in December). This argument was odd enough that the district court took pains to ensure that it had understood the argument correctly. After recounting that Ms. McCoy had signed both documents, the court asked: "So what was your concern about whether the person had seen the document or not?" App. vol. II, at 18. This led to the

10

defense counsel repeating his argument that "I don't know if McCoy has actually seen what he's authenticating." *Id.* The district court had good reason to be nonplussed. Obviously, Ms. McCoy would have seen the Indian Blood Certificate when she signed it, and presumably she would have seen it again when self-authenticating it. And again, I am unsure if this is one of Wood's arguments that the majority deems "nonfrivolous."[2] *See* Maj. Op. at 16.

### B.    Wood's Notice Arguments: Rule 902(11)

As seen from the transcript above, Wood argued that the government's Certificate of Authenticity was untimely, because, in his words, Rule 902(11) requires that "[b]efore trial, the proponent must give an adverse party reasonable written notice to offer the record, and must make the record and certification available for inspection."[3] He neglected to recite the rest of the

---

[2] On appeal, Wood raises another argument—that the Certificate of Authenticity contains spaces by which to identify the business record being self-authenticated but that the custodian failed to identify the Indian Blood Certificate as that document. But all discussions in the district court show that everyone understood that the Indian Blood Certificate was the business record at issue. In fact, no other record was ever spoken of. And the government referred to the Indian Blood Certificate being attached to the Certificate of Authenticity, which Wood never challenged. So I see no abuse of discretion here. I am unsure of the majority opinion's basis in describing the Certificate as a "standalone document." Maj. Op. at 13. I am also unsure whether this is one of Wood's arguments that the majority deems "nonfrivolous." *See* Maj. Op. at 16.

[3] As I understand his objection in the district court, Wood argued that the Certificate of Authenticity "is not notarized in any way." App. vol. II, at 15. But under Rule 902(11), the certification of the custodian is proper if it complies with the requirements of a federal statute. Here, the applicable statute is 18 U.S.C. § 1746, which does not require notarization. I am unsure if this is an argument that the majority deems "nonfrivolous." *See* Maj. Op. at 16.

11

sentence: "so that the party has a fair opportunity to challenge [the record and certificate of authenticity]."[4]

The majority opinion states that the district court "failed to consider," the timeliness issue, Maj. Op. at 20, and "essentially ignored" the notice issue, *id.* at 16. But the district court need not discuss an issue to have considered it. The district court may well have noted that Wood had never asserted a challenge from anything contained in the Certificate of Authenticity but had done so

---

[4] The majority rejects Wood's favored interpretation of a per se violation of Rule 902(11) by the government's only making the Certificate of Authenticity available for his inspection after trial had allegedly begun. Op. Br. at 27–28. Based on the text of the rule, I acknowledge that Wood has an argument that "before trial" provides a clear line. Under that bright-line rule, a certificate produced before trial began would per se permit the opponent a full and fair opportunity to challenge the record and certificate; and a certificate produced after trial began, would not. But our cases reject this approach. *See Stenson v. Edmonds*, 86 F.4th 870, 880 (10th Cir. 2023) (ruling that the district court did not abuse its discretion in declining to self-authenticate business records even though plaintiff provided "the certification just prior to trial" because that timing still "deprived Defendants of their opportunity to meaningfully inspect and challenge it"); *United States v. Jenkins*, 540 F. App'x 893, 901 (10th Cir. 2014) (unpublished) (finding "nothing improper whatsoever" with allowing admission of cell-phone records under Rule 902(11) even though the certification was not provided until the second day of trial because the defendant had long had the underlying record and the government alleged that the witness was unavailable) (Minutes – Jury Selection, *Jenkins*, No. 12-CR-00061 (D. Wyo. Sept. 24, 2012), ECF No. 44; Notice Regarding Certification of Records by USA, *Jenkins*, No. 12-CR-00061 (D. Wyo. Sept. 25, 2012), ECF No. 46); *United States v. Lewis*, 594 F.3d 1270, 1278–80 (10th Cir. 2010) (ruling that the district court did not abuse its discretion by allowing self-authentication under Rule 902(11) when the government had notified the defendant twelve days before trial that it would authenticate business records by certification and the business records had long been available for inspection). As seen, our cases put the focus on whether the opponent had a fair opportunity to challenge the record or certificate rather than relying exclusively on when it was produced.

12

exclusively from the written contents of the Indian Blood Certificate. The district court may well have understood that Wood would have been in the same position had the government made the Certificate of Authenticity available for inspection weeks earlier. In that circumstance, the district court would have been hard pressed to say that the delay in producing the Certificate of Authenticity had deprived Wood of a fair opportunity to challenge the Indian Blood Certificate or the Certificate of Authenticity itself. The district court did not abuse its discretion in its evidentiary determination.

What is the effect of today's ruling? If the witnesses are still available, Wood may be retried. And this time, Ms. McCoy's Certificate of Authenticity will obviously have been made available for inspection long before the retrial. The retrial will be a repeat performance, making allowances for witnesses and evidence lost in the years since the conviction. I doubt that the drafters of Rules 803(6) and 902(11) envisioned such a result. By the text of their rules, Wood needed to show that the government deprived him of a fair opportunity to challenge the Indian Blood Certificate or the Certificate of Authenticity itself by the government's not timely making the Certificate of Authenticity available for his inspection. Wood failed to show that here. The record shows that Wood had a fair and full opportunity to challenge the Indian Blood Certificate (as he did) and the Certificate of Authenticity with information from the Certificate of Authenticity (such as the legitimacy of Ms. McCoy as the Nation's record custodian, which he did not challenge). Interestingly, he did not contend during

13

closing arguments that the Indian Blood Certificate or the Certificate of Authenticity was untrustworthy. Nor did he call Ms. McCoy on the telephone or subpoena her as a witness. He had an opportunity to do both.

Because in my view the district court appropriately exercised its discretion and rendered a reasonable decision, I would affirm.

14